UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH A. DROZDOWSKI,

                     Plaintiff,                 15-CV-292-MJR

    -v-                         DECISION AND ORDER

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

                     Defendant.
_____

## <u>INTRODUCTION</u>

Pursuant to 28 U.S.C. §636(c), the parties have consented to disposition of this case by a United States Magistrate Judge.  (Dkt. No. 8)

On April 6, 2015, plaintiff Kenneth Drozdowski ("plaintiff" or "Drozdowski") filed a complaint, pursuant to 42 U.S.C. §405(g) of the Social Security Act (the "Act"), challenging defendant Commissioner of Social Security's ("defendant" or "Commissioner") determination that he is not entitled to Title II Social Security Disability ("SSD") benefits.  Both plaintiff and defendant have filed motions for judgment on the pleadings.  For the following reasons, plaintiff's motion for judgment on the pleadings (Dkt. No 5) is granted in part and defendant's motion for judgment on the pleadings (Dkt. No. 6) is denied.  The case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

### Procedural History

Plaintiff filed an application for SSD benefits on April 27, 2012. (Tr. 51)[1] Plaintiff claimed that he has been disabled since April 22, 2012, as a result of cervical neck and lower back injuries following a neck and spinal surgery in April of 2011. (Tr. 52) Drozdowski's disability claim was denied on August 14, 2012 and he filed a request for a hearing. (Tr. 59-64) Administrative Law Judge Grenville W. Harrop, Jr. (the "ALJ") conducted a hearing on September 12, 2013. (Tr. 26-50) During the hearing, the ALJ took testimony from plaintiff and Vocational Expert Rachel Duchon ("VE").[2] Id. Following the hearing, the ALJ issued a decision denying Drozdowski's claim for benefits. (Tr. 12-21) Plaintiff requested review of the determination by the Appeals Council. (Tr. 7-8) On January 29, 2015, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6) Drozdowski then filed the instant action on April 6, 2015. (Dkt. No. 1)

### Prior Medical Evidence

On June 18, 1999, Drozdowski visited the emergency room at Buffalo General Hospital complaining of severe and intransigent lower back pain as a result of a work related injury. (Tr. 290) Plaintiff was employed as a firefighter and paramedic for the City of Lackawanna. (Tr. 30) An MRI of plaintiff's lumbar spine showed a large, left paracentral and lateral recess disc herniation at L5-S1. (Tr. 288, 307) Dr. James G.

---

[1] References to "Tr." are references to the administrative record in this case.

[2] At the hearing, Drozdowski was represented by a paralegal employed by attorney Robert J. Maranto.

Egnatchik, a neurosurgeon, performed lumber spine surgery on plaintiff on June 22, 1999.  (Tr. 288)  During the surgery, Dr. Egnatchik performed a laminotomy, removed a fragment, and decompressed the S1 nerve root.  (Tr. 288)  Following the surgery, plaintiff was discharged from physical therapy after three sessions as a result of non-attendance.  (Tr. 319)  In July 1999, Drozdowski reported to Dr. Egnatchik that he was doing well, and that his pain and numbness had significantly improved.  (Tr. 269)  He returned to work full time.  (Tr. 270)

On February 28, 2008, plaintiff had hernia surgery, which included a bilateral laparoscopic inguinal hernia repair.  (Tr. 252)

Plaintiff was injured at work again on October 2, 2010, when an obese woman he was assisting fell on him.  (Tr. 338)  As a result of the accident, Drozdowski saw pain management specialist Dr. Adaku Nwachuku on October 15, 2010 for neck and back pain that radiated to his extremities.  (Tr. 338)  Dr. Nwachuku examined plaintiff and found limited ranges of motion of the cervical and lumbar spine, right-sided cervical muscle pulling with range of motion testing, and protraction of the shoulders.  *Id*.  Dr. Nwachuku limited plaintiff to working no more than eights hours per day and no more than forty hours per week.  (Tr. 341)  He also prohibited plaintiff from lifting in excess of 20 pounds, pushing or pulling more than 25 pounds, or engaging in repetitive bending, lifting and twisting.  *Id*.  Dr. Nwachuku found that plaintiff had a moderate (50%) disability at that time.  *Id*.  An MRI of plaintiff's cervical spine on November 5, 2010 revealed disc herniations at C3-4, C4-5, C5-6 and C6-7.  (Tr. 304-305)  X-rays of plaintiff's cervical spine taken on the same day demonstrated: (1) mild spondylotic changes with anterior osteophytes at C3-4, C4-5 and C6-7; (2) mild facet joint

3

arthropathy predominately involving the lower cervical spine; (3) slight retrolisthesis of C5 over C6; and (4) straightening of the normal cervical lordosis.  (Tr. 300)

Drozdowski saw his primary care physician, Dr. Michael Cellino, on November 18, 2010.  (Tr. 259)  He told Dr. Cellino that he was experiencing neck pain radiating into his arm with some weakness.  *Id*.  Plaintiff also stated that he was currently on disability, and that he would need to retire on disability at some point.  *Id*.  Plaintiff saw Dr. Nwachuku later that same month, at which time plaintiff reported that his cervical symptoms had improved but his lumbar issues remained stagnant.  (Tr. 335-337)  Dr. Nwachuku found that Plaintiff had a mild to moderate temporary disability and that he was able to return to work without restrictions.  *Id*.

Plaintiff saw Dr. Egnatchik on January 31, 2011.  (Tr. 271)  He complained that since his October 2010 neck injury he has had chronic cervical pain with radiation into his shoulders as well as numbness and tingling in both hands.  *Id*.  Plaintiff stated that although he was still working, he had difficulty with range of motion and was taking Flexeril to help with his muscle spasms.  *Id*.  Plaintiff further stated that his symptoms had become progressively worse since the injury.  *Id*.  Dr. Egnatchik reviewed the MRI scan of Drozdowski's cervical spine, and determined that he would be an excellent candidate for a surgery which involved an anterior cervical discectomy and fusion at C5-6 and C6-7 with allograft bone spacers and Synthes plating.  (Tr. 272)  Plaintiff's preoperative diagnosis was cervical disc herniations at C5-6 and C6-7.  (Tr. 267)  At a preoperative conference on April 8, 2011, Dr. Egnatchik indicated that plaintiff's temporary impairment was 100%.  (Tr. 274)

4

Dr. Egnatchik performed the neck surgery on plaintiff on April 22, 2011.  (Tr. 267)  As planned, the surgery included an anterior cervical discectomy and fusion at C5-6 and C6-7 supported by plate and screws.  (Tr. 267)  Also during the operation, Dr. Egnatchik noted that the central disc herniation at C6-7 included osteophyte involvement that compressed the thecal sac and removed disc material.  *Id*.  A central osteophytic herniation at C5-6 was also extracted.  *Id*.  At a post-surgical follow-up on May 19, 2011, plaintiff reported that he was doing well but had significant discomfort in the back of his neck.  (Tr. 276)  X-rays revealed postsurgical changes from C5 through C7 with excellent alignment.  (Tr. 287)  Dr. Egnatchik opined that plaintiff continued to have a temporary impairment of 100%.  (Tr. 279)

Dr. Egnatchik next saw Drozdowski on August 1, 2011.  (Tr. 278)  At that time, plaintiff complained of a burning, gnawing pain in the back of his neck.  *Id*.  After reviewing the spinal x-rays, Dr. Egnatchik opined that plaintiff's "fusion instrument was intact and incorporating" but was not yet solidly fused.  (Tr. 280)  He further found that plaintiff continued to have a temporary impairment of 100%.  (Tr. 281)  Dr. Egnatchik had a follow-up with Drozdowski three months later on November 3, 2011.  (Tr. 28)  Plaintiff again complained of some burning, gnawing pain in the back of his neck.  *Id*.  A physical exam revealed that plaintiff ambulated without any assistive devices, his motor strength was normal, and that his reflexes and sensation were intact.  *Id*.  Dr. Egnatchik reviewed x-rays and concluded that while plaintiff's upper level was still not solidly fused, his lower level "look[ed] very good."  *Id*.  Dr. Egnatchik noted that plaintiff would most likely never be able to return to fire-fighting work, and suggested VESTID

5

retraining.  *Id*.  Plaintiff's temporary impairment level remained at 100%.  *Id*.  On

January 8, 2012, Dr. Egnatchik wrote a letter stating that he was unable to complete

functional capacity evaluations as they were not part of a routine office visit, and

recommended that plaintiff go a rehabilitation facility or physical therapy establishment

if that type of evaluation was needed.  (Tr. 421)

Dr. Egnatchik saw Drozdowski again on February 6, 2012.  (Tr. 282)  Plaintiff

indicated that his symptoms had improved, but he was still experiencing some achiness

and soreness.  *Id*.  He was ambulating without assistive devices.  *Id*.  Plaintiff's motion

strength, reflexes and sensation were all normal, though his range of motion was

somewhat limited.  *Id*.  A review of the most recent x-rays demonstrated that the fusion

and instrumentation were "intact and incorporating nicely."  *Id*.  Dr. Egnatchik continued

to find that plaintiff had a temporary impairment of 100%.  *Id*.

### SSD Benefits Application and Subsequent Medical Evidence

Plaintiff filed for SSD benefits on April 27, 2012, stating that he could not work

due to cervical and lower back injuries post fusion.  (Tr. 176)  Plaintiff indicated on his

application that he worked for the City of Lackawanna as a firefighter and paramedic

from March 1990 through April 2011, and that he worked as a federal emergency

manager from December 2008 through April 2012.  *Id*.

On August 2, 2012, plaintiff underwent an Independent Medical Examination by

Dr. Hongbiao Liu, a consulting internist, nuclear medicine and pain specialist.  (Tr. 355-

358)  Dr. Liu found that plaintiff could squat only 80% of full and could walk on heels

and toes with difficulty.  *Id*.  Plaintiff had no difficulty changing for the exam or getting on

6

and off the exam table.  (Tr. 356) Plaintiff was able to raise from the chair without difficulty.  *Id*.  During the exam, Dr. Liu found that plaintiff had limited range of cervical spine motion, lumbar spine motion and bilateral shoulder motion.  (Tr. 357)  Dr. Liu diagnosed Drozdowski with: (1) chronic low back pain secondary to work injury, status post surgery; and (2) chronic neck pain secondary to work injury, status post surgery.  (Tr. 357-358)  He concluded that plaintiff had mild limitation for his routine activities and that he "should try to avoid lifting, carrying, bending, kneeling or overhead reaching."  *Id*.

Plaintiff saw Dr. Cellino on August 15, 2012, at which time he complained of neck pain, myalgias, back pain and joint pain.  (Tr. 425)  Plaintiff also stated that he took Lortab every six hours as needed for pain as well as naproxen.  *Id*.  A physical exam indicated that plaintiff had normal range of motion, and exhibited no edema or tenderness.  *Id*.  Plaintiff then saw Dr. Egnatchik on September 20, 2012.  (Tr. 387) Plaintiff reported that he was able to perform some activities but was very sore afterwards.  He also stated that he used very occasional pain medication for achiness and stiffness.  *Id*.  Following a physical exam, Dr. Egnatchik concluded that plaintiff had a normal gait, and that his motor strength and reflexes were intact and normal.  *Id*. Spinal x-rays demonstrated that the fusion instrumentation was intact and working well.  (Tr. 388)  Dr. Egnatchik reported that plaintiff had a 75% marked permanent disability and that, in his opinion, plaintiff would never be able to return to firefighting.  *Id*.

Dr. Robert Weisberg, a Social Security Administration ("SSA") review internist, reviewed Drozdowski's SSA file and completed a Physical RFC Assessment.  (Tr. 359-64)  Dr. Weisberg, who did not physically examine plaintiff, concluded that plaintiff could

sit, stand, and walk for about 6 hours in an 8-hour workday, could lift 20 pounds occasionally, and could lift 10 pounds frequently.  (Tr. 360)  Dr. Weisberg limited Drozdowski to never balancing, occasionally climbing, kneeling, crouching, and crawling, and frequently stooping.  (Tr. 361)  Plaintiff was examined on October 17, 2012 by Dr. Michael Landi, an orthopedic surgeon, for purposes of his workers' compensation claim.  (Tr. 404-405)  Dr. Landi determined that plaintiff had reduced ranges of cervical and lumbar motions.  *Id*.  His gait and station were normal, and he had no trouble getting on or off the examining table.  *Id*.

Drozdowski saw Dr. Cellino on October 19, 2012.  (Tr. 423-24)  Plaintiff indicated that he was feeling much better on his current medication and a musculoskeletal exam revealed normal range of motion.  *Id*.  On December 13, 2012, Dr. Egnatchik wrote another letter indicating that he is unable to complete functional capacity evaluations and recommended plaintiff go to a rehabilitation facility or physical therapy establishment if such an evaluation was needed.  (Tr. 370)  Drozdowski saw Dr. Cellino on March 19, 2013.  (Tr. 427-429)  Plaintiff complained of back and neck pain and indicated that Dr. Egnatchik, his neurosurgeon, found him to be 75% disabled.  *Id*. Plaintiff was examined and found to have normal range of motion with no edema or tenderness.  *Id*.

*Hearing Testimony*

Drozdowski testified that he was employed by the City of Lackawanna as a firefighter and paramedic for twenty years.  (Tr. 30)  Plaintiff also testified that he worked as a federal emergency manager from December 2008 through April 2011 and

that he now receives injured on duty salary from the City of Lackawanna.[3]  (Tr. 30, 33)

The physical requirements for a federal emergency manager include moving and lifting

briefcases, paperwork and boxes.  (Tr. 31)  The position also requires approximately six

hours of sitting at a desk during the work day.  *Id*.  Plaintiff testified that his disability

arose following neck surgery in April of 2011.  (Tr. 32)  Plaintiff testified that Dr.

Egnatchik and Dr. Cellino advised him that it would take approximately a year for him to

recover from surgery, but that his condition actually worsened during that time.  *Id*.

Plaintiff further testified that he takes 10 milligrams of hydrocodone every 6

hours for pain and that he is in constant pain.  (Tr. 34) The pain radiates from his neck

up to his head and down his back and spine, where it also travels to his arms and

fingers.  *Id*.  Plaintiff testified that without medication his pain level is 9 or 10 out of 10

on the pain scale.  (Tr. 35)  His wife helps him dress and cooks for him.  (Tr. 37)

Plaintiff testified that he spends about 45 minutes stretching every morning and then

walks around for a short time.  *Id*.  Plaintiff testified he has difficulty finding a

comfortable position for sitting to watch television.  (Tr. 37)  However, plaintiff also

testified that he spends four to six hours a day sitting outside, weather permitting, and

that he has trouble standing for more than 45 minutes to an hour.  (Tr. 38)  Plaintiff can

kneel on one knee, but has trouble gripping objects.  (Tr. 39)

---

[3]  There is conflicting information in the record as to plaintiff's last day of work.  When asked
during the hearing when he last worked, plaintiff answered "April 20th, I believe...[i]t was just prior to the
surgery."  (Tr. 30)  The Court assumes plaintiff was referring to April 20, 2011, since his neck surgery took
place on April 22, 2011.  However, plaintiff indicated in his SSD benefits application that he was employed
as a firefighter through April 2011 and as a federal emergency manager through April 2012.  (Tr. 177)
The ALJ indicated in his decision that plaintiff worked until April 2012.  Plaintiff's counsel states that
although plaintiff received disability payments from his employer and possibly worker's compensation
benefits from his employer, he did not work after his neck surgery on April 22, 2011.  (Dkt. No. 5-1, p. 4 n.
1)  As a result, the Court is unable to state with certainly when plaintiff last worked.

Rachel Duchon, the VE, was given a number of hypothetical scenarios by the ALJ to determine what, if any, available jobs plaintiff was capable of performing. First, Duchon was asked if there are available national and regional jobs for a individual who is 48 years old, college educated, has plaintiff's work experience and training, who has had cervical neck and lower back fusion, takes hydrocodone, and has a residual functional capacity of light work. (Tr. 45) Duchon testified that 169 DOT titles matched the given scenario based on transferrable skills, and that with a residual functional capacity of light work, some of the possible jobs included first aid attendant, ticket seller and assembly machine tender. (Tr. 46) All had available positions within the national economy and New York state. The ALJ then asked Duchon to assume all the same criteria except that the individual's residual functional capacity was sedentary work. (Tr. 47) Duchon gave examples of available jobs in the national economy and New York State which included telephone solicitor, appointment clerk, and envelope addressor. *Id*. Upon questioning by plaintiff's attorney, Duchon testified that if the individual in the hypothetical had to rest for two hours a day in addition to lunch and other breaks, they would be unable to perform the positions she had listed. (Tr. 49)

## DISCUSSION

### *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the]

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (WDNY 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may not "substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions, even if supported by substantial evidence, must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to do so is reversible error. *Id.*

### Determining "Disability" Under the Act

In order to be entitled to disability insurance benefits, the claimant must be under a disability prior to his date last insured — in Drozdowski's case, on or before April 22, 2012. A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may conclude that a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for the work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). These steps proceed as follows.

First, the Commissioner must determine whether the claimant is "working" during the time for which they are seeking benefits and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the Commissioner's inquiry is over: the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.*

12

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a "severe impairment."  *Id.* §404.1520(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.*  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations and the inquiry ends.  *Id.*

Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is otherwise "equal to" an impairment listed in Appendix 1.  *Id.* §404.1520(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If, however, the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Initially, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the record.  *Id.* §404.1520(e).  Residual functional capacity "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §404.1545(a)(1).  The Commissioner's assessment of the claimant's residual functional capacity is then applied at steps four and five.

At step four, the Commissioner "compare[s] [the claimant's] residual functional capacity assessment . . . with the physical and mental demands of [his or her] past relevant work." *Id.* §404.1520(f).  If, based on that assessment, the claimant is able to perform his or her past work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.*

Finally, if the claimant cannot perform his or her past relevant work, the Commissioner considers whether, based on the claimant's residual functional capacity assessment, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.*  If, however, the claimant cannot perform any other work, he or she is disabled within the meaning of the Act.  *Id.*

The burden of proof at steps one through four described above rests on the claimant.  If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

### ALJ's Decision

Here, the ALJ followed the required five-step process for evaluating disability claims. With respect to step one, the Commissioner found that plaintiff had not engaged in substantial gainful activity since April 22, 2012, the alleged onset date of disability.  (Tr. 14)  At the second step, the ALJ found that plaintiff had severe impairments that caused significant limitations in plaintiff's ability to perform basic work activities.  *Id.*  Specifically,

the ALJ found that plaintiff had C5-6 and C6-7 disc herniation status post discectomy and fusion, cervical spine facet joint osteoarthritis, and L5-S1 disc herniation status post microdiscectomy.  *Id*.  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations.  (Tr. 15)  The ALJ went on to find that plaintiff had the residual functional capacity to perform sedentary work as defined in Section 404.1567(a) of Title 20 of the Code of Federal Regulations.  *Id*.  For this reason, the ALJ found that plaintiff was not disabled within the meaning of the Act.

   *Plaintiff's Challenge*

Plaintiff asserts that the Commissioner failed to properly evaluate the opinion of Dr. Egnatchik, plaintiff's treating surgeon.  Plaintiff argues that the ALJ erred not only by giving "no weight" to Dr. Egnatchik's opinion that plaintiff had a marked 75% permanent disability, but also that the ALJ failed to consider Dr. Egnatchik's opinion in light of the factors set forth in 20 C.F.R. §404.1527.

Social Security regulations require an ALJ to give "controlling weight" to the opinion of a treating physician on the issue of the nature and severity of a claimant's impairment if that opinion "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Venio v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *accord* 20 C.F.R. §404.1527.  In addition, an ALJ is entitled to give greater weight to the opinion of a non-treating physician–and even to disregard the opinion of the treating physician altogether– *but only* if the ALJ considers the following factors: "(1) the frequency of examination and the length,

nature, and extent of the treatment relationship, (2) the evidence supporting the treating physician's opinion, (3) the consistency of the opinion with the record as a whole, (4) whether the opinion is from a specialist, and (5) any other factors brought to the list that contradict the treating physician's opinion." *Foxman v. Barnhart*, 157 Fed. Appx. 344 (2d Cir. 2005); *accord* 20 C.F.R. §404.1527.   Federal regulations also require the ALJ to provide good reasons in their decision for the weight given to treating source's opinions. *See* 20 C.F.R. §404.1527.  Indeed, while the ALJ need not explicitly recite each and every factor, he or she "must apply the substance of the treating physician rule." *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir 2004).

Dr. Egnatchik opined, on September 20, 2012, that claimant had a marked 75% permanent disability and that he did not think the claimant would be able to return to firefighting.   The ALJ states, in conclusory fashion, that no weight is given to Dr. Egnatchik's opinion that plaintiff is disabled because "opinions that the claimant is disabled or unable to work are reserved to the Commissioner." (Tr. 19)  There is insufficient detail in the remainder of the decision for this Court to find that the ALJ complied with the treating physician rule.   Specifically, aside from referring to Dr. Egnatchik as plaintiff's neurosurgeon, there is no discussion of the length and nature of their relationship, including the fact that Dr. Egnatchik treated plaintiff since 1999, that he performed two surgeries on plaintiff, and that he treated plaintiff over a number of years for the injury that resulted in the alleged disability.  In evaluating the opinion evidence, there is no indication that the ALJ considered that Dr. Egnatchik performed the lumbar and cervical spine surgery on plaintiff and saw plaintiff repeatedly in the year following the surgery, which is

when plaintiff alleges that the injury became worse and eventually caused him to become totally disabled.  While the ALJ references some of the visits, he does not explain or analyze how these visits fail to support a finding of disability or are inconsistent with the record as a whole.  In addition, the ALJ does not specifically compare Dr. Egnatchik's finding that plaintiff is 75% permanently disabled with other evidence in the record. Instead, the ALJ states *only* that Dr. Egnatchik's opinion is to be given no weight because it references an issue left to the Commissioner.  It is correct that a treating physician's statement that an applicant is disabled "cannot itself be determinative."  *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999).  However, if the record contains an opinion from a medical source on an issue reserved to the Commissioner, the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Solsee v. Astrue*, 737 F. Supp. 2d 102 (WDNY 2010).  Here, the ALJ appears to completely discount the opinion of Dr. Egnatchik for the sole reason that it encompasses a final determination to be made by the Commissioner.  While Dr. Egnatchik does not comment on the plaintiff's ability to do sedentary work, he does opine that plaintiff he has a 75% marked permanent disability.  There may be reasons to discount this opinion or to give greater weight to other conflicting testimony and opinion evidence in the record, but the ALJ erred by failing to specifically state those reasons. *See Foxman v. Barnhart*, 157 Fed. Appx. 344 (2d Cir. 2005) (matter remanded for proper application of the treating physician rule where ALJ afforded no weight to treating physician's opinion, including his finding that plaintiff was "totally disabled" from work even though the ALJ did not make any specific findings as to plaintiff's ability to perform sedentary work); *Erb v. Colvin*, 2015 U.S.

Dist. LEXIS 122873 (WDNY 2015) (ALJ's statements that the rejected opinions of plaintiff's doctor were "inconsistent with the record as a whole" were too conclusory to constitute a "good reason" to reject the treating psychiatrist's opinions); *Ashley v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 178560 (NDNY 2014) ("this...conclusory statement about the treatment records fails to fulfill the heightened duty of explanation").

The Second Circuit has instructed that it will "not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and...will continue remanding when...encounter[ing] opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28 (2d Cir. 2003) (internal citation omitted). For the reasons just stated, the matter will be remanded to the Commissioner for a re-evaluation of Dr. Egnatchik's opinion in accordance with 20 C.F.R. §404.1527.

Between April 22, 2011, the date of plaintiff's surgery, and February 6, 2012, Dr. Egnatchik saw plaintiff on at least three occasions and repeatedly found that plaintiff had a 100% temporary impairment during that time. The ALJ gave no weight to these opinions because they were stated prior to the alleged onset date of disability. (Tr. 18) Courts have found medical opinions provided prior to the alleged onset date to be irrelevant in many situations. *Binder v. Commissioner of Social Security*, 2016 U.S. Dist. LEXIS 99254 (NDNY 2016). However, not every medical opinion provided before an alleged onset date is necessarily irrelevant. *Id.*; *see also Mills v. Astrue*, 2012 U.S. Dist. LEXIS 180644 (NDNY 2012) ("Notably, medical records which predate the claimant's alleged onset date can prove relevant to a claimant's later condition provided that there is indication that the

symptoms experienced extended in duration into the relevant time period.")  Here, plaintiff alleges that his disability was the result of cervical and lower back injuries post fusion.  The fusion occurred during his cervical and lumbar spine surgery on April 22, 2011.  In sum, plaintiff maintains that he suffered a work injury to his neck in October 2010, that he underwent surgery in April 2011 as a result, and that his symptoms worsened over the course of the year following the surgery to the point were he became permanently disabled in April 2012.  Because the claimed disability relates to the April 2011 surgery and plaintiff's progress and symptoms over the following year, it is not apparent that the opinions offered by Dr. Egnatchik during that time are irrelevant to plaintiff's claim.  Therefore, on remand, the ALJ is also instructed to consider what weight, if any, to give the opinions of Dr. Egnatchik from April 22, 2011 through the alleged onset date of plaintiff's disability.

Plaintiff further argues that the ALJ erred by improperly "splitting" the medical opinion of Dr. Liu and failing to perform a function-by-function analysis before making an RFC finding.  (Dkt. No. 5-1, pgs. 15-20)  In light of the determination to remand this matter for further proceedings, the Court declines to reach plaintiff's remaining contentions.  *See e.g., Lloyd v. Colvin*, 2016 U.S. Dist. LEXIS 94034 (WDNY 2016) (where matter was remanded on the basis of the ALJ's error in evaluating a treating physician's opinion, the court declined to reach plaintiff's argument about weight given to another doctor's opinion); *Erb v. Commissioner of Social Security*, 2015 U.S. Dist. LEXIS 122873 (WDNY 2015) ("In light of my determination that the ALJ erred in evaluating the opinion of [plaintiff's] treating physician, thus warranting remand, I decline to evaluate whether the ALJ erred in assessing plaintiff's RFC or credibility."); *Norman v. Astrue*, 912 F. Supp. 2d 33, 85 n. 79 (SDNY 2012) ("[b]ecause I find that

19

remand is proper on the basis of the ALJ's failure to properly develop the record and to properly apply the treating physician rule, I do not reach plaintiff's arguments with respect to (1) the ALJ's determination of his RFC at step four and (2) whether the ALJ carried his burden at step five of the analysis...[t]he aforementioned legal errors cause the remaining portions of the ALJ's analysis to be inherently flawed").

## CONCLUSION

For the foregoing reasons, Drozdowski's motion (Dkt. No. 5) is granted in part, the Commissioner's motion (Dkt. No. 6) is denied, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of the Court shall take all necessary steps to close this case.


 SO ORDERED.


DATED:      September 26, 2016
            Buffalo, New York




                              /s/ Michael J. Roemer
                              MICHAEL J. ROEMER
                              UNITED STATES MAGISTRATE JUDGE